**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| In re:<br><br>THE CENTER FOR SPECIAL NEEDS TRUST ADMINISTRATION, INC.,<br><br>    Debtor.<br>_____/<br><br>MICHAEL GOLDBERG, as Chapter 11 Trustee of the estate of Debtor, The Center for Special Needs Trust Administration, Inc.<br><br>    Plaintiff,<br><br>v.<br><br>BIG STORM REAL ESTATE LLC, BRIAR CAPITAL REAL ESTATE FUND LLC, MJMRBM LLC and PEDRO FALCON,<br><br>    Defendants.<br>_____/ | Case No. 8-24-bk-00676-RCT<br><br>Chapter 11<br><br><br><br><br><br><br><br><br><br>Adv. Pro. No. 8:25-ap-00048-RCT |

**BRIAR CAPITAL REAL ESTATE FUND, LLC'S**
**ANSWER AND AFFIRMATIVE DEFENSES TO COMPLAINT**

COMES NOW, BRIAR CAPITAL REAL ESTATE FUND, LLC ("Briar Capital"), by and through its undersigned attorneys, and pursuant to Rule 12 of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding through Rule 7012 of the Federal Rules of Bankruptcy Procedure, and hereby files this Answer and Affirmative Defenses to the Complaint for Damages, Injunctive and Other Relief (the Doc. 1 – the "Complaint"), filed by Plaintiff MICHAEL GOLDBERG, as Chapter 11 Trustee of the estate of Debtor, The Center for Special Needs Trust Administration, Inc. ("Plaintiff" or "Chapter 11 Trustee"), and states as follows:

4936-0945-9514

## INTRODUCTION

1. Admitted this is an adversary proceeding. Without knowledge as to allegations of misappropriation of assets and purportedly fraudulent transfer to Boston Finance Group, LLC from the Debtor, therefore denied as to the remaining allegations.

2. Without knowledge, therefore denied.

3. Admit that the final judgment described herein has been entered; denied that it supports any cause of action against Briar Capital.

4. Without knowledge as to any transfers not involving Briar Capital, therefore denied; specifically denied that any transfers made to Briar Capital by its Borrower, Big Storm Real Estate LLC ("BSRE"), were fraudulent.

5. Denied as to allegations directed at Briar Capital. Without knowledge as to the remaining allegations, therefore denied.

6. Without knowledge, therefore denied.

7. Without knowledge, therefore denied.

8. Admitted that the Complaint purports to assert the claims and relief described therein. Denied that the Chapter 11 Trustee is entitled to any relief or remedies as to Briar Capital.

## THE PARTIES

9. Without knowledge, therefore denied.

10. Admitted that the Appointment Orders have been entered in the bankruptcy case (Case No. 8-24-bk-00676-RCT – the "Main Case"). Denied as to any consequence or characterization of the same as to Briar Capital.

11. Without knowledge, therefore denied.

12. Admitted.

4936-0945-9514

13. Without knowledge, therefore denied.

14. Admitted.

15. Without knowledge, therefore denied.

16. Without knowledge, therefore denied.

## JURISDICTION AND VENUE

17. Admitted that the Court has subject matter jurisdiction over this action. Denied that Plaintiff has stated any cause of action as to Briar Capital.

18. Admitted this action is a core proceeding. Without knowledge, therefore denied as to the remaining allegations.

19. Admitted that the venue is proper in this Court. Denied that Plaintiff has stated any cause of action as to Briar Capital.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

### I. Procedural History

20. Admitted.

21. Admitted that Doc. 88 and Doc. 93 have been filed in the Main Case. Denied as to any consequence or characterization of the same as related to Briar Capital.

22. Admitted that Doc. 109 had been entered in the Main Case. Denied as to any consequence or characterization of the same as related to Briar Capital.

23. Admitted that Claim No. 4-3 was filed by the Internal Revenue Service. However, Claim No 4-3 was amended by Claim No. 4-4, filed on January 28, 2025 (the "Amended IRS Claim"), which Amended IRS Claim is $0.00, meaning the Internal Revenue Service does not have a claim against the Debtor.

### II. Background

**A.      The Debtor's Business.**

24.     Without knowledge, therefore denied.

25.     Without knowledge, therefore denied.

26.     Without knowledge, therefore denied.

27.     Without knowledge, therefore denied.

28.     Without knowledge, therefore denied.

29.     Without knowledge, therefore denied.

30.     Without knowledge, therefore denied.

31.     Without knowledge, therefore denied.

**B.      Giovoni's Relationship to Debtor.**

32.     Without knowledge, therefore denied.

33.     Without knowledge, therefore denied.

34.     Without knowledge, therefore denied.

35.     Without knowledge, therefore denied.

36.     Without knowledge, therefore denied.

**C.      The Initial Fraudulent Transfers[1] to BFG.**

37.     Without knowledge, therefore denied.

38.     Admitted as to filing of the Complaint in Adv. No. 8:24-ap-00139-RCT (the "BFG Adversary Case"). Denied as to characterization of said Complaint or consequence thereof as to Briar Capital.

39.     Without knowledge, therefore denied.

---

[1] Briar Capital's use of the terms "Initial Fraudulent Transfer" or "Subsequent Transfers" as defined in the Complaint should not imply that Briar Capital agrees that any of the transfers described in the Complaint were fraudulent. Briar Capital specifically denies that any transfers made to Briar Capital were fraudulent or avoidable.

40. Without knowledge, therefore denied.

41. Without knowledge, therefore denied.

42. Without knowledge, therefore denied.

43. Without knowledge as to the details related to any of the alleged "Initial Fraudulent Transfers," therefore denied. Denied that any funds paid to Briar Capital are avoidable and recoverable under §§ 544, 548, and 550(a) of the Bankruptcy Code, §§ 726.105(1)(a), 726.105(1)(b) and 726.106(1), Florida Statutes, or under any other legal theory.

44. Admitted that Docs. 20, 47, 51, 52, and 53 were filed or entered in the BFG Adversary Case. Denied as to any consequence or characterization of the same as to Briar Capital.

45. Denied. The Amended IRS Claim confirms that the IRS does not have a claim against the Debtor, and therefore any attempt by "the Chapter 11 Trustee to step into the shoes of the IRS pursuant to 11 U.S.C. 544(b)(1) and to apply the longer ten (10) year statute of limitations available to the IRS to bring fraudulent transfer actions pursuant to Florida state law" is prohibited.

**D.   The Subsequent Transfers and Real Property.**

46. Without knowledge, therefore denied.

47. Without knowledge, therefore denied.

48. Without knowledge, therefore denied.

49. Without knowledge, therefore denied.

50. Without knowledge, therefore denied.

51. Without knowledge, therefore denied.

52. Admitted that BSRE is the record title holder to the real property located at 12707 49th St N, Pinellas Park, FL 33762 (the "BSRE Property"), which BSRE Property is subject to the

perfected, first position lien of the Briar Capital Mortgage (defined below). Without knowledge, therefore denied as to the remaining allegations.

53. Without knowledge, therefore denied.

54. Without knowledge, therefore denied.

E. **The MJMRBM Transfers.**

55. Without knowledge, therefore denied.

56. Without knowledge, therefore denied.

F. **The Briar Capital Transfers.**

57. Admit that BSRE executed the mortgage in favor of Briar Capital dated September 18, 2020, and recorded in the official records of Pinellas County, Florida (the "Official Records"), on September 20, 2020 as Instrument # 2020280245, in Book 21172, Page 1637 (the "Briar Capital Mortgage"). Denied that BSRE borrowed funds or executed the Briar Capital Mortgage for the purchase of the BSRE Property. BSRE had owned the BSRE Property since February 4, 2015 as to "BSRE Parcel 1" (as described in a special warranty deed from M.R. French to BSRE dated February 4, 2015, and recorded in the Official Records on February 10, 2015, as Instrument # 2015038146, in Book 18673, Page 477), and since September 14, 2016 as to "BSRE Parcel 2" (as described in a special warranty deed from Forty Ninth Street Real Estate to BSRE dated September 14, 2016, and recorded in the Official Records on September 16, 2016, as Instrument # 2016285343, in Book 19344, Page 605).

58. Denied. All payments made to Briar Capital by BSRE were made directly to Briar Capital from BSRE.

G. **The Falcon Transfers.**

59. Without knowledge, therefore denied.

60. Without knowledge, therefore denied.

61. Without knowledge, therefore denied.

62. Without knowledge, therefore denied.

63. Without knowledge, therefore denied.

64. Without knowledge, therefore denied.

65. Without knowledge, therefore denied.

66. Without knowledge, therefore denied.

67. Denied as to Briar Capital. Without knowledge, therefore denied as to other Defendants.

68. Without knowledge, therefore denied.

## COUNT I
## ACTION TO AVOID FRAUDULENT TRANSFERS
## PURSUANT TO 11 U.S.C. § 544 AND § 726.105(1)(b), FLA. STAT.
**(Against all Defendants)**

69. Briar Capital realleges its responses to paragraphs 1 through 68 as if set forth fully herein.

70. Admitted that the Chapter 11 Trustee is attempting to avoid the purported "Subsequent Transfers." Denied that any transfers to Briar Capital may be avoided. Without knowledge, therefore denied as to the allegations as to any other Defendant.

71. Without knowledge, therefore denied.

72. Without knowledge, therefore denied.

73. Denied as to the allegations regarding the Internal Revenue Service. The Amended IRS Claim confirms that the Internal Revenue Service does not have a claim against the Debtor, and therefore any attempt by "the Chapter 11 Trustee to step into the shoes of the IRS pursuant to 11 U.S.C. 544(b)(1) and to apply the longer ten (10) year statute of limitations available to the IRS

4936-0945-9514

to bring fraudulent transfer actions pursuant to Florida state law" is prohibited. Without knowledge, therefore denied, as to any other unsecured creditors.

74. Denied.

75. Denied as to Briar Capital. Without knowledge, therefore denied as to other Defendants.

76. Denied as to Briar Capital. Without knowledge, therefore denied as to other Defendants.

Briar Capital denies that the Chapter 11 Trustee is entitled to any of the relief requested at the conclusion of Count I.

## COUNT II
## ACTION TO AVOID FRAUDULENT TRANSFERS
## PURSUANT TO 11 U.S.C. § 544 and § 726.106(1), FLA. STAT.
### (Against all Defendants)

77. Briar Capital realleges its responses to paragraphs 1 through 68 as if set forth fully herein.

78. Admitted that the Chapter 11 Trustee is attempting to avoid the purported "Subsequent Transfers." Denied that any transfers to Briar Capital may be avoided. Without knowledge, therefore denied as to the allegations as to any other Defendant.

79. Without knowledge, therefore denied.

80. Without knowledge, therefore denied.

81. Denied as to the allegations regarding the Internal Revenue Service. The Amended IRS Claim confirms that the Internal Revenue Service does not have a claim against the Debtor, and therefore any attempt by "the Chapter 11 Trustee to step into the shoes of the IRS pursuant to 11 U.S.C. 544(b)(1) and to apply the longer ten (10) year statute of limitations available to the IRS

to bring fraudulent transfer actions pursuant to Florida state law" is prohibited. Without knowledge, therefore denied, as to any other unsecured creditors.

82. Denied as to Briar Capital. Without knowledge, therefore denied as to other Defendants.

83. Denied as to Briar Capital. Without knowledge, therefore denied as to other Defendants.

84. Denied as to Briar Capital. Without knowledge, therefore denied as to other Defendants.

Briar Capital denies that the Chapter 11 Trustee is entitled to any of the relief requested at the conclusion of Count II.

## COUNT III
## ACTION TO AVOID FRAUDULENT TRANSFERS
## PURSUANT TO 11 U.S.C § 548(a)(1)(B)
### (Against all Defendants)

85. Briar Capital realleges its responses to paragraphs 1 through 68 as if set forth fully herein.

86. Admitted that the Chapter 11 Trustee is attempting to avoid the purported "Subsequent Transfers." Denied that any transfers to Briar Capital may be avoided. Without knowledge, therefore denied as to the allegations as to any other Defendant.

87. Without knowledge, therefore denied.

88. Denied as to Briar Capital. Without knowledge, therefore denied as to other Defendants.

89. Denied as to Briar Capital. Without knowledge, therefore denied as to other Defendants.

4936-0945-9514

90. Denied as to Briar Capital. Without knowledge, therefore denied as to other Defendants.

Briar Capital denies that the Chapter 11 Trustee is entitled to any of the relief requested at the conclusion of Count III.

## COUNT IV
## ACTION TO RECOVER PROPERTY TRANSFERRED OR VALUE OF SUCH PROPERTY AND OBTAIN INJUNCTIVE RELIEF
## 11 U.S.C. § 550 AND/OR §§ 726.108 AND 726.109, FLA. STAT.
**(Against all Defendants)**

91. Briar Capital realleges its responses to paragraphs 1 through 68 as if set forth fully herein.

92. Admitted that the Chapter 11 Trustee is attempting to avoid the purported "Subsequent Transfers." Denied that any transfers to Briar Capital may be avoided. Without knowledge, therefore denied as to the allegations as to any other Defendant.

93. Without knowledge, therefore denied.

94. Denied as to Briar Capital. Without knowledge, therefore denied as to other Defendants.

95. Denied as to Briar Capital. Without knowledge, therefore denied as to other Defendants.

96. Denied as to Briar Capital. Without knowledge, therefore denied as to other Defendants.

97. Denied as to Briar Capital. Without knowledge, therefore denied as to other Defendants,

98. Denied as to Briar Capital. Without knowledge, therefore denied as to other Defendants.

Briar Capital denies that the Chapter 11 Trustee is entitled to any of the relief requested at the conclusion of Count IV.

## COUNTS V - X OF THE COMPLAINT

Counts V – X of the Complaint are directed at BSRE only and do not seek any relief from Briar Capital. Therefore no response is required thereto by Briar Capital. To the extent allegations in Counts V – X could be deemed to apply to Briar Capital, said allegations are specifically denied.

## BRIAR CAPITAL'S AFFIRMATIVE DEFENSES

Briar Capital asserts the following Affirmative Defenses to the purported causes of action asserted in the Complaint against Briar Capital. Briar Capital reserves the right to supplement or amend these affirmative defenses as they may be discovered through its investigation of the allegations in the Complaint and/or through discovery.

### General Allegations Relevant to Affirmative Defenses

The Chapter 11 Trustee's purported claims against Briar Capital and rooted in flawed factual and legal theories. Briar Capital is nothing more than a commercial real estate lender, who in good faith, made a loan (as described hereinbelow, the "Briar Capital Loan") to BSRE and Big Storm Pinellas LLC ("BSP"), secured by real and personal property owned by BSRE, BSP and certain affiliates thereof[2] who guaranteed the Briar Capital Loan.

As the Chapter 11 Trustee should have been aware prior to filing the Complaint, BSRE has owned the BSRE Property since February 4, 2015 as to BSRE Parcel 1 and since September 14,

---

[2] The guarantors are BIG STORM BREWERY LLC, a Florida limited liability company ("Big Storm Brewery"), BIG STORM PASCO LLC, a Florida limited liability company ("Big Storm Pasco"), BIG STORM CAPE CORAL LLC, a Florida limited liability company ("Big Storm Cape Coral"), BIG STORM CIDER AND MEAD LLC, a Florida limited liability company ("Big Storm Cider and Mead"), BIG STORM COCKTAILS LLC, a Florida limited liability company ("Big Storm Cocktails"), and BIG STORM COFFEE COMPANY LLC, a Florida limited liability company ("Big Storm Coffee", together with Big Storm Brewery, Big Storm Pasco, Big Storm Cape Coral, Big Storm Cider and Mead, and Big Storm Cocktails, collectively, "Guarantors" and each individually, a "Guarantor")

4936-0945-9514

2016 as to BSRE Parcel 2. The Briar Capital Loan was made on September 18, 2020, in the amount of $2,500,000.00, and thereafter amended on June 22, 2023, to increase the amount of the Briar Capital Loan to $3,250,000.00. Therefore, BSRE obviously did not utilize the Briar Capital Loan proceeds to purchase the BSRE Property on February 4, 2015 and September 14, 2016, respectively, as is alleged in paragraph 57 of the Complaint.

To the contrary, Briar Capital provided value to BSRE in the form of money lent to BSRE and BSP in good faith, and may retain the lien of its Mortgage and other loan documents and enforce the same free of the Chapter 11 Trustee's purported avoidance action as to the BSRE Property. All payments made to Briar Capital in repayment of the Briar Capital Loan were taken for value and in good faith to satisfy the obligations of BSRE and BSP to Briar Capital. BSP was a tenant of BSRE, and paid rent to BSRE with revenue generated by, among other things, a retail taproom business operated at the BSRE Property. The rents and revenues generated by operations at the BSRE Property were secured by an assignment of rents contained in a Mortgage, Assignment of Rents, Security Agreement and Fixture Filing executed by BSRE in favor of Briar Capital (the "Briar Capital Mortgage"). To claim that payments made to Briar Capital were made from allegedly fraudulent transfers as opposed to revenue generated by its collateral ignores the realities of the commercial real estate lending market.

Against the foregoing undisputed factual background, Briar Capital asserts the following affirmative defenses:

### First Affirmative Defense – Failure to State a Claim as to Briar Capital

The allegations contained in the Complaint fail to state a claim upon which relief can be granted and the claims should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure, made applicable to this adversary proceeding by Rule 7012 of the Federal Rules of Bankruptcy Procedure.

Specifically, without limitation, the allegations that "BSRE entered into a mortgage in favor of BCRE for the purchase of Real Property located at 12707 49th St N, Pinellas Park, FL 33762 (collectively the 'BCRE Transfers')" and "[u]pon information and belief, BSRE made monthly mortgage payments to [Brian Capital] using Debtor funds which originated from the BSRE Transfers" and the other general allegations made in the Complaint are insufficient to state a claim against Briar Capital to Counts I, II, III or IV of the Complaint, the only counts in which Briar Capital is a named Defendant.

### Count I

As to Count I, invoking 11 U.S.C. § 544 and § 726.105(1)(b), Fla. Stat., the Chapter 11 Trustee is not seeking to avoid the lien of the Briar Capital Mortgage, but rather is only seeking to avoid the amounts paid to Briar Capital as purported "Subsequent Transfers." However, because the Chapter 11 Trustee admits that the Briar Capital Loan was made and does not allege the Briar Capital Loan in and of itself was fraudulent, its allegations therefore implicitly admit that payments made to Briar Capital were in satisfaction of the amounts owed to Briar Capital. It does not allege BSRE made the payments to Briar Capital "[w]ithout receiving a reasonably equivalent value in exchange for the transfer or obligation" as is required by § 726.105(b), Fla. Stat. Therefore, Count I fails to state a claim against Briar Capital.

### Count II

Count II, invoking 11 U.S.C. § 544 and § 726.106(1), Fla. Stat., likewise fails to allege that BSRE made the payments to Briar Capital "[w]ithout receiving a reasonably equivalent value in

exchange for the transfer or obligation" as is required by § 726.106(1), Fla. Stat. Therefore, Count II likewise fails to state a claim against Briar Capital.

### Count III

Count III relies on the similar language of 11 U.S.C. 548(a)(1)(B), which requires that a transferee "received less than a reasonably equivalent value in exchange for such transfer or obligation'…" But again, Count III does not dispute the validity of the Briar Capital Loan and value provided thereby, and thus cannot dispute the value of the payments Briar Capital received in partial satisfaction of the same. Therefore, Count III fails to state a claim against Briar Capital.

### Count IV

Count IV is an action to recover the alleged "Subsequent Transfers" under 11 U.S.C. § 550 and §§ 726.108 and 726.109, Fla. Stat. This cause of action is premised on the success of Counts I through III, which as noted above, fail to state a claim against Briar Capital. Therefore, Count IV fails to state a claim as well.

Moreover, 11 U.S.C. 550(b) provides that the Chapter 11 Trustee may not recover from "any immediate or mediate transferee," such as Briar Capital, "that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided." Again, the Chapter 11 Trustee does not dispute the validity of the Briar Capital Loan and the fact that payments made to Briar Capital were to satisfy monthly mortgage payments. Therefore, the cause of action relying on 11 U.S.C. § 550 is contradicted by and barred by the allegations of the Complaint.

### **Second Affirmative Defense – Statute of Limitations**

The Chapter 11 Trustee's claim that it may utilize a non-existent claim by the IRS to "step into the shoes of the IRS pursuant to 11 U.S.C. 544(b)(1) and to apply the longer ten (10) year

4936-0945-9514

statute of limitations available to the IRS to bring fraudulent transfer actions pursuant to Florida state law" (*see* 26 U.S.C. § 6502) is barred by the fact the IRS does not have a claim against the Debtor.

On or about January 28, 2025, the IRS filed an amended proof of claim in the Main Case, asserting a claim in the amount of $0.00. By doing so, the IRS affirmatively and voluntarily waived any right to pursue further liabilities relating to the periods in question has affirmatively disclaimed any ongoing liability for the relevant periods by effectively withdrawing its claim. There is no longer any viable or existing IRS claim upon which the Trustee may base standing under § 544(b)(1). The Trustee cannot step into the IRS's shoes if the IRS is not wearing any shoes - i.e., where the IRS holds no actionable or enforceable claim. Without a qualifying creditor, § 544(b)(1) provides no pathway to extend the statute of limitations or to assert claims under Florida fraudulent transfer law beyond the time otherwise permitted as set forth in § 726.110, Fla. Stat.

Therefore, to the extent any of the Chapter 11 Trustee's claims are rooted in transactions that purported occurred beyond the statute of limitations periods provided in § 726.110, Fla. Stat. said claims are barred.

Further, the same principle applies to the actual statutes of limitations for Counts I through IV, including, without limitation, §§ 726.110(1), 726.110(2), 726.110(3), Fla. Stat., and 11 U.S.C. § 548(a)(1). The Chapter 11 Trustee's claims are in part rooted in purported transfers that took place beyond the relevant statute of limitations and said claims are thus barred.

### Third Affirmative Defenses – Laches

Some or all of the claims against Briar Capital are barred by the doctrine of laches, including (but not limited to) as codified at § 95.11(7), Fla. Stat.

### Fourth Affirmative Defense – Payments to Briar Capital Made in Exchange for Value and Taken in Good Faith – 11 U.S.C. §§ 548(c) and 550(b)

Briar Capital accepted payments made by BSRE for value and in good faith – the partial satisfaction of the valid and enforceable Briar Capital Loan – and without knowledge of any potential voidability of the alleged "Initial Transfers" or "Subsequent Transfers."  Therefore, pursuant to 11 U.S.C. §§ 548(c) and 550(b), the payments made to Briar Capital may not be avoided as prayed for in Counts I through IV of the Complaint, and Briar Capital may retain and enforce its liens.

**Fifth Affirmative Defense –**
**<u>Briar Capital is a Good Faith Transferee for Value – §§ 726.109(2)(b) and (4), Fla. Stat.</u>**

Briar Capital is a good faith transferee of the payments made by BSRE and the value of said payment for reasonably equivalent value and in good faith – the partial satisfaction of the valid and enforceable Briar Capital Loan – and without knowledge of the alleged fraudulent nature of the "Initial Transfers" or "Subsequent Transfers."  The payments made to Briar Capital were payments made to a good faith subsequent transferee for value. Therefore, Therefore, pursuant to §§ 726.109(2)(b) and (4), Fla. Stat., and 11 U.S.C. § 550(b), entry of a judgment against Briar Capital on Counts II and III of the Complaint is prohibited, and Briar Capital may retain and enforce its liens.

**<u>Sixth Affirmative Defense – Slander of Title / Setoff</u>**

Some or all of the claims against Briar Capital are barred or should be reduced as a result of the Chapter 11 Trustee's slander of the title to the BSRE Property encumbered by the Briar Capital Mortgage and other loan documents (the "Briar Capital Collateral"). Specifically, the Chapter 11 Trustee recorded a "Notice of Entry of Order Granting Summary Judgment as to Liability" in the Official Records on September 16, 2024, as Instrument # 2024234111, in Book 22922, Page 1414 (the "Notice of Summary Judgment Order"). In the Notice of Summary

Judgment Order, the Chapter 11 Trustee, among other things, states that he "asserts a constructive trust on the Property which arose by operation of law on the date of acquisition of such Property, to the extent such Property was acquired with funds wrongfully obtained from the Center." The Notice of Summary Judgment Order further states that the Chapter 11 Trustee "should be notified of the time and place of any lease, encumbrance, sale, auction, or other transfer of the Property." The recording of the summary judgment order constitutes slander of title as to the Briar Capital Collateral. To the extent the Chapter 11 Trustee is entitled to recover any payments made to Briar Capital, which is specifically denied, the amount of said payments should be set off by the damages being caused to Briar Capital by the Chapter 11 Trustee's slander of title with respect to the Briar Capital Collateral.

To establish slander of title, the proponent must prove: "(1) a falsehood (2) has been published, or communicated to a third person (3) when defendant-publisher knows or reasonably should know that it will likely result in inducing others not to deal with the plaintiff and (4) in fact, the falsehood does play a material and substantial part in inducing others not to deal with plaintiff; and (5) special damages are proximately caused as a result of the published falsehood." *Bothmann v. Harrington*, 458 So. 2d 1163, 1168 (Fla. 3d DCA 1984). To prevail as to a claim for slander of title, a claimant must demonstrate that the publishing "knew or reasonably should have known at the time of publication that the publication would likely result in inducing others not to deal with the plaintiff." *Phillips v. Epic Aviation, LLC*, 234 F. Supp. 3d 1174, 1211 (M.D. Fla. 2017).

In this case, the Notice of Summary Judgment Order contains a falsehood: that the Chapter 11 Trustee has or "asserts" a constructive trust on the Briar Capital Collateral and implies that he must be contacted with respect to any sale of the Briar Capital Collateral. This provides the impression that the Chapter 11 Trustee actually holds a constructive trust on the Briar Capital

4936-0945-9514

Collateral, when in reality that is merely a remedy it is requesting in this case. The Chapter 11 Trustee recorded the Notice of Summary Order with full knowledge of the falsehood and the affect it would have upon the Briar Capital Collateral. Specifically, it was recorded and published knowing that it would cause a cloud on title to the Briar Capital Collateral, and force Briar Capital to accede to the Chapter 11 Trustee's demand with respect to the sale of the Briar Capital Collateral, or be delayed in enforcing its liens while it litigates with the Chapter 11 Trustee. Indeed, Briar Capital is now being delayed in the enforcement of its liens on the Briar Capital Collateral, and is in fact being forced to litigate with the Chapter 11 Trustee. This delay and expense of litigation is causing Briar Capital to suffer and incur damages. Said damages may be setoff against any recovery the Chapter 11 Trustee may obtain as to Briar Capital, which right to recovery is specifically denied.

Briar Capital reserves the right to file a counterclaim or separate action against the Chapter 11 Trustee if he does not immediately remove the cloud on title to the Briar Capital Collateral.

### **Seventh Affirmative Defense – Unclean Hands**

The slander of title as the Briar Capital Collateral renders the hands of the Chapter 11 Trustee unclean. Therefore, the doctrine of unclean hands bars any recovery against Briar Capital.

### **CONSENT TO ENTRY OF FINAL ORDERS AND JUDGMENTS**

Pursuant to Fed. R. Bankr. P. 7012(b), Briar Capital hereby consents to the entry of final orders or judgments by the Bankruptcy Court in this case.

**WHEREFORE**, Briar Capital respectfully requests that: (i) Counts I through IV of the Complaint be dismissed; (ii) a final judgment be entered in favor of Briar Capital as to Counts I through IV of the Complaint; (iii) that Briar Capital recover the cost of this action from the Chapter

4936-0945-9514

11 Trustee; and (iv) for all other relief the Court deems just and proper.

Dated: April 29, 2025.

/s/ *Zachary J. Bancroft*
Zachary J. Bancroft
Florida Bar No. 0145068
**BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC**
200 South Orange Avenue, Suite 2050
Orlando, Florida 32801
Telephone:  (407) 422-6600
zbancroft@bakerdonelson.com
  achentnik@bakerdonelson.com
  bkcts@bakerdonelson.com

*Counsel for Briar Capital Real Estate Fund, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 29, 2025, a true and correct copy of the foregoing has been served electronically via the Court's CM/ECF system on all parties registered to receive electronic noticing in this case.

/s/ *Zachary J. Bancroft*
Zachary J. Bancroft

4936-0945-9514