## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| In re:<br><br>THE CENTER FOR SPECIAL NEEDS TRUST ADMINISTRATION, INC.,<br><br>    Debtor.<br>_____/<br><br>MICHAEL GOLDBERG, as Chapter 11 Trustee of the estate of Debtor, The Center for Special Needs Trust Administration, Inc.<br><br>    Plaintiff,<br><br>v.<br><br>BIG STORM REAL ESTATE LLC, BRIAR CAPITAL REAL ESTATE FUND, LLC, MJMRBM LLC and PEDRO FALCON,<br><br>    Defendants.<br>_____/ | Case No. 8-24-bk-00676-RCT<br><br>Chapter 11<br><br><br><br><br><br><br>Adv. Pro. No. 8:25-ap-00048-RCT |

### BRIAR CAPITAL REAL ESTATE
### FUND, LLC'S MOTION FOR SUMMARY JUDGMENT

COMES NOW, BRIAR CAPITAL REAL ESTATE FUND, LLC ("Briar Capital"), by and through undersigned counsel, pursuant to Bankr. R. 7056 and Fed. R. Civ. P. 56, and respectfully moves for summary judgment in its favor as to all claims asserted against it in Counts I–IV of the *Complaint for Damages and Other Relief* (Adv. Doc. 1 – the "Complaint"). The undisputed facts and the record establish that Briar Capital received all payments from Big Storm Real Estate, LLC ("BSRE") in good faith, for value, and without knowledge of any potential voidability. Accordingly, Briar Capital is entitled to summary judgment, and in support of this motion (the "Motion"), alleges as follows:

1

I.  **INTRODUCTION AND BACKGROUND**

Michael Goldberg, as Chapter 11 Trustee of the estate of Debtor, The Center for Special Needs Trust Administration, Inc. (the "Plaintiff" or the "Trustee") seeks to avoid ordinary course loan payments made by BSRE to Briar Capital. The Trustee contends he is entitled to avoid these payments to the extent the payments were allegedly funded by "improper" upstream transfers. The Trustee does not allege that the payments from BSRE to Briar Capital were, in themselves, fraudulent transfers. In fact, counsel for the Trustee admitted at the Pretrial Status Conference conducted on April 25, 2025 that the payments made to Briar Capital were likely in good faith for value.

This case is not about undoing a sham transaction between BSRE and Briar Capital; it is about a good faith lender receiving loan payments to which it was indisputably entitled. None of the four counts pled by the Trustee against Briar Capital state a viable claim. The Trustee fails to allege any facts suggesting Briar Capital had knowledge of any underlying fraud or improper purpose. Briar Capital's good faith, the value exchanged, and the lack of knowledge of voidability provide Briar Capital an absolute defense to the Trustee's claims.

Furthermore, this case is eroding Debtor's bankruptcy estate rather than enhancing it. The Trustee believes there is equity in the Pinellas Park Property and would like to sell it, with excess proceeds after payment of the amounts owed to Briar Capital flowing to the estate. The Loan Agreement contains a broad indemnity provision[1] in favor of Briar Capital pursuant to which Briar

---

[1] *See* Loan Agreement, § 8.11(D): "EACH LOAN PARTY SHALL INDEMNIFY AND HOLD HARMLESS EACH INDEMNITEE FROM AND AGAINST ANY AND ALL LIABILITIES, OBLIGATIONS, LOSSES, DAMAGES, PENALTIES, CLAIMS, DEMANDS, ACTIONS, JUDGMENTS, SUITS, COSTS, EXPENSES AND DISBURSEMENTS (INCLUDING FEES AND EXPENSES OF COUNSEL) OF ANY KIND OR NATURE WHATSOEVER WHICH MAY AT ANY TIME BE IMPOSED ON, INCURRED BY OR ASSERTED AGAINST ANY SUCH INDEMNITEE IN ANY WAY RELATING TO OR ARISING OUT OF OR IN CONNECTION WITH … (D) ANY ACTUAL OR PROSPECTIVE LITIGATION, CLAIM, OR INVESTIGATION RELATING TO ANY OF THE FOREGOING, WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY (INCLUDING ANY INVESTIGATION OF, PREPARATION FOR, OR DEFENSE OF ANY PENDING OR THREATENED

Capital will be able to recover its attorneys' fees and costs incurred in defending this case. However, despite the fact that Briar Capital provided the Trustee with evidence of the good faith for value nature of this transaction beginning in February of 2025 and in an affidavit and supporting documentation provided on March 4, 2025, the Trustee has persisted in maintaining this case against Briar Capital to the detriment of the Debtor's estate. Granting summary judgment is not only proper under applicable law, but it will also stop the erosion of equity the Trustee claims that exists in the Pinellas Park Property.

## II. BACKGROUND, COMPLAINT ALLEGATIONS, CLAIMS ASSERTED AND UNDISPUTED FACTS

### a. Background, Complaint Allegations, Claims Asserted

The Debtor filed a voluntary chapter 11 petition on February 9, 2024. (Compl. ¶ 20). The Court approved the appointment of the Trustee in an *Order Approving Appointment of Chapter 11 Trustee*. (BK Doc. 109). Though not filed in this adversary proceeding, in an attempt to gain leverage over Briar Capital by clouding title to its collateral, the Trustee recorded a Notice of Lis Pendens in the Official Record of Pinellas County, Florida on February 12, 2025, as Instrument # 2025043204 (the "Lis Pendens"). The Trustee alleges that between 2010 and 2024, the Debtor, initially established by Leo J. Govoni, and under Govoni's influence, funneled roughly $100 million of the Debtor's assets to a network of companies—including numerous transfers to or for the benefit of Boston Finance Group, LLC ("BFG"). (Compl. ¶¶ 32-35, 37). Allegedly, Govoni and BFG forced the Debtor to "loan" $100 million to BFG and then caused BFG to "loan" that money to various subsidiaries and affiliates. (Compl. ¶ 48).

---

CLAIM, INVESTIGATION, LITIGATION OR PROCEEDING) AND REGARDLESS OF WHETHER ANY INDEMNITEE IS A PARTY THERETO…" (capitalized emphasis in original); *see also* Loan Agreement, Appendix 1 – Page 7: "Obligation" includes "all interest accruing thereon, reasonable fees, costs and expenses payable under the Loan Documents or in connection with the enforcement of rights under the Loan Documents,…"

The Trustee further alleges that between 2015 and 2024, BFG allegedly disbursed at least $8.9 million to BSRE (the "BSRE Transfers"), which purportedly used the BSRE Transfers to "procure and maintain" three Florida properties, including the Pinellas Park Property[2], which is secured by the Briar Capital Loan Documents (Compl. ¶ 49-52).

It is undisputed that in September of 2020 BSRE "entered into a mortgage in favor of Briar Capital" with respect to the on the Pinellas Park property. (Compl. ¶ 57). The Trustee pleads "upon information and belief" that BSRE's monthly payments to Briar Capital were made "using Debtor funds which originated from the BSRE Transfers." (Compl. ¶ 58). The Complaint alleges that the Debtor funds moved from the Debtor to BFG, from BFG to BSRE, and then from BSRE to Briar Capital, making Briar Capital a subsequent transferee. (Compl. ¶¶ 75, 83, 89). In the Complaint filed on February 7, 2025 (Adv. Doc. 1), the Trustee maintains certain transfers involving the Defendants are subject to avoidance, as both initial and subsequent transferees. (Compl. ¶ 38).

The Trustee alleges in the first three counts that none of the Defendants—including Briar Capital—"took the Subsequent Transfers for value … or in good faith." (Compl. ¶¶ 76, 84, 90). The Trustee seeks to avoid the Briar Capital Transfers as fraudulent transfers pursuant to §§ 544, 548, and 550(a) of the Bankruptcy Code,[3] and §§ 726.105(1)(a), 726.105(1)(b) and 726.106(1), Fla. Stat.

### b. Briar Capital's Supporting Factual Positions

Briar Capital's supporting factual positions are set forth in detail in the Briar Affidavit, executed by Leah Goldberg, the Chief Financial Officer of Briar Capital, a copy of which is

---

[2] Capitalized terms used but not defined in this Motion shall have the meanings ascribed to them in the Briar Affidavit, filed contemporaneously with this Motion, and cited as "Briar Aff. ¶___." The Briar Affidavit has been executed by Leah Goldberg, the Chief Financial Officer of Briar Capital. Because Ms. Goldberg shares the same last name as the Trustee, to avoid confusion, the Briar Affidavit is not being referred to as the "Goldberg Affidavit."

[3] Statutory references in this Motion are to Title 11 of the United States Code (the "Bankruptcy Code") unless otherwise stated.

attached to this Motion as **Exhibit 1**. The factual allegations set forth in the Briar Affidavit are incorporated into this Motion by reference and will not be repeated in full.

Briefly, however, the Briar Affidavit describes the Big Storm Loan Documents, which were originally executed on September 18, 2020, evidencing and securing a commercial loan to BSRE and BSP in the original principal amount of $2,500,000.00, defined in the Briar Affidavit as the "Big Storm Loan." (Briar Aff. ¶ 5). On June 23, 2023, the amount of the Big Storm Loan was increased to $3,250,000.00. (Briar Aff. ¶ 5). The Big Storm Loan Documents are fully described in paragraphs 5.a. – 5.o of the Briar Affidavit.

The terms of the Big Storm Loan and Big Storm Loan Documents, including all amendments thereto, were negotiated at arms' length, in good faith, and in a commercially reasonable manner. (Briar Aff. ¶ 8). Briar Capital's due diligence with respect to the Big Storm Loan or amendments thereto did not reveal anything consistent with the Trustee's allegations with respect to the BSRE Payments. (Briar Aff. ¶¶ 10-12, 17). To the contrary, Briar Capital believed that payments were derived from revenue generated by the Pinellas Park Property. (Briar Aff. ¶ 17). Although Briar Capital could enforce its rights under the SNDA and potentially evict BSP (Briar Aff. ¶ 5.j.), it has refrained from doing so to date.

Briar Capital took the security interests provided to it in the Big Storm Loan Documents for value and in good faith to secure the obligations under the Big Storm Loan Documents. Such value is evidenced by the contents of the Big Storm Loan Documents and the Closing Statements (Briar Aff. Exs. P and Q) confirming that funds were advanced to BSRE and BSP. Briar Capital also took all payments made pursuant to the Big Storm Loan Documents for value and in good faith because they were in partial satisfaction of the debt evidenced by the Big Storm Loan

Documents, and were consistent with the payments required by the Big Storm Loan Documents. (Briar Aff. ¶ 16).

### III. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(a), made applicable by Federal Rule of Bankruptcy Procedure 7056 ("Bankruptcy Rule"), a party is entitled to summary judgment upon a showing that there is no genuine dispute as to any material fact and a showing that it is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The existence of an alleged factual dispute will not preclude summary judgment; "the requirement is that there be no *genuine* issue of *material* fact." *Id*. A fact is material where that fact "'might affect the outcome of the suit under the governing law' and is not 'irrelevant or unnecessary.'" *Henry v. Sheriff of Tuscaloosa Cnty.*, 135 F.4th 1271, *17 (11th Cir. 2025) (quoting *Anderson*, 477 U.S. at 248). A dispute is genuine "if a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (citations omitted).

A defendant moving for summary judgment based on affirmative defenses "must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial." *Baker v. Upson Reg'l Med. Ctr.*, 94 F.4th 1312, 1317 (11th Cir. 2024) (citations omitted). Accordingly, to prevail on summary judgment, the moving party must show that "on all the essential elements on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party." *Id*. (citing *Chanel, Inc. v. Italian Activewear of Fla. Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991)).

Briar Capital is entitled to summary judgment because as to all the essential elements of the Trustee's claims, there exists no genuine issue of material fact and no reasonable finder of fact could find in favor of the Trustee.

IV. **Analysis**

    a. **Counts I, II, and III – Constructively Fraudulent Transfers under §§ 544, 548(a)(1)(B), and §§ 726.105(1)(b), 726.106(1), Fla. Stat.**

The Trustee alleges that transfers from BSRE to Briar Capital are avoidable as fraudulent or as constructively fraudulent transfers under §§ 544 and 548(a)(1)(B), as well as §§ 726.105(1)(b) and 726.106(1), Fla. Stat. Under § 544, a trustee may use its strong-arm power to avoid certain transfers of property of the debtor. *See* 11 U.S.C. § 544(a). And, under § 548, a trustee may set aside constructively fraudulent transfers. Thus, the Trustee attempts to avoid transfers from the Debtor to BSRE, which it alleges were then transferred to Briar Capital. (Compl. ¶ 57–58).

Although Briar Capital denies these allegations, that denial does not prevent summary judgment. The Bankruptcy Code provides a complete defense to a transferee which accepts a transfer in good faith and for value. 11 U.S.C. § 548(c). Florida law includes an analogous provision. § 726.109(1), Fla. Stat. (fraudulent transfers not voidable "against a person who took in good faith and for a reasonably equivalent value"). In this case, value was provided to BSRE for its transfers of security interests and payments to Briar Capital, and Briar Capital accepted the transfers in good faith and without knowledge of fraud or fraudulent intent. (Briar Aff. ¶¶ 16-17). Accordingly, all counts alleged by BSRE are barred by the good faith transferee for value defenses described above.

    1. *Reasonably Equivalent Value*

4928-2450-7210

BSRE received reasonably equivalent value for its transfers to Briar Capital. The Trustee fails to allege, rebut, or even acknowledge, the exchange of reasonably equivalent value. "[O]n a constructive fraudulent transfer claim, the party seeking to avoid the transfer must establish by a preponderance of the evidence that the transferor received less than reasonably equivalent value in exchange for the transfer." *Langdale Capital Assets, Inc. v. Woodard (In re Berkman),* 517 B.R. 288, 301 (Bankr. M.D. Fla. 2014). Under Florida law, "value" is given for a transfer if, "in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied[.]" § 726.104(1), Fla. Stat.

Here, BSRE's payments to Briar Capital were on account of an antecedent debt – the obligations under the Big Storm Loan Documents. It is undisputed that BSRE executed the Big Storm Loan Documents in favor of Briar Capital on or about September 18, 2020, pursuant to which Briar Capital provided funds to BSRE secured by the Pinellas Park Property and other collateral. (Compl. ¶ 57; Briar Aff. ¶¶ 12, 16). It is likewise undisputed that the payments made by BSRE to Briar Capital were normal payments contemplated by the Loan Documents. (Briar Aff. ¶¶ 14-16). Thus, it is conclusively established that Briar Capital gave reasonably equivalent value for its security interests and the payments received from BSRE.

As to "reasonably equivalent" value, courts evaluate "the benefit actually obtained by the [transferee] in the transaction." *In re Berkman*, 517 B.R. at 301. "Reasonably equivalent value need not be dollar-for-dollar." *Id*. at 302. Here, BSRE received the loan proceeds secured by the Pinellas Park Property and associated collateral, including rents and revenues generated thereby. Accordingly, the value of the loan proceeds are reasonably equivalent to the value of the security interests and payments provided to Briar Capital.

   2. *Good Faith*

Further, as a subsequent transferee, Briar Capital is entitled to a "good faith" defense. Courts evaluate good faith using an objective test to determine whether the transferee had actual or constructive knowledge of the transferor's fraudulent purpose. *See Wiand v. Waxenberg*, 611 F. Supp. 2d 1299, 1319 (M.D. Fla. 2009); *In re World Vision Entertainment, Inc.*, 275 B.R. 641, 658 (Bankr. M.D. Fla. 2002). Lack of actual knowledge of a fraudulent purpose is relevant, but not dispositive, as to a court's good faith inquiry. *Wiand*, 611 B.R. at 1319–20; *Soule v. Alliot (In re Tiger Petroleum Co.)*, 319 B.R. 225, 236 (Bankr. N.D. Okla. 2004)). A court may find a lack of good faith where a transaction is irregular. *See Von Kahle v. Greenacre Prop. (In re Key Dev. Grp., LLC)*, 449 B.R. 148, 153 (Bankr. M.D. Fla. 2011). An irregular transaction occurs "out of the ordinary mode of transacting such business." *See In re Key Dev. Grp., LLC*, 449 B.R. at 153 (quoting *Walbrun v. Babbitt*, 83 U.S. 577, 581 (1872)).

Here, the terms of the Big Storm Loan and Big Storm Loan Documents, including all amendments thereto, were negotiated at arms' length, in good faith, and in a commercially reasonable manner. (Briar Aff. ¶ 9). None of Briar Capital's due diligence indicated any fraudulent activity. (Briar Aff. ¶ 10-11, 17). The Big Storm Loan all payments made pursuant thereto occurred in the ordinary course of business. (Briar Aff. ¶¶ 14-17). At all relevant times, neither Briar Capital nor its employees knew or should have known of any fraudulent activity allegedly committed by Govoni or his related entities. (Briar Aff. ¶¶ 11, 14-17). The Trustee fails to allege and will be unable to show or otherwise create a plausible inference that Briar Capital had actual knowledge of or a duty to investigate Govoni's allegedly fraudulent scheme, and Briar Capital has established

that it at all times acted in good faith. (Briar Aff. ¶¶ 11, 14-17). Accordingly, this Court should grant summary judgment as to Counts I, II and III in favor of Briar Capital.[4]

### b. Count IV – Action to Recovery Transferred Value and Obtain Injunctive Relief under § 550 and §§ 726.108, 726.109, Fla. Stat.

Count IV is purely derivative of Counts I-III. Recovery under § 550 presupposes a successful avoidance under § 544 or § 548. With Counts I–III having no basis, no transfer remains to be recovered, and no basis exists for injunctive relief. Moreover, even if an avoidance judgment were entered, § 550(b) independently forecloses recovery because Briar Capital took the payments for value, in good faith, and without knowledge of voidability. Both value[5] and good faith are discussed *supra*. As to knowledge of voidability, "the performance of due diligence and the making of a reasonable conclusion based upon documented facts that the funds are not tainted does create a good faith defense that the attorney did not have 'knowledge of voidability'" under § 550. *Leshin v. Welt (In re Warmus)*, 276 B.R. 688, 698 (S.D. Fla. 2002). Here, Briar Capital performed due diligence and came to a reasonable conclusion, based on the documents it evaluated, that the funds were not tainted. (Briar Aff. ¶ 10-11, 17). Accordingly, Briar Capital is entitled to a good faith defense under § 550.

The trustee's sweeping request for equitable remedies must therefore be denied, and summary judgment entered in Briar Capital's favor on Count IV.

### c. The Lis Pendens should be Dissolved as to the Pinellas Park Property

---

[4] As an aside, Florida's four-year statute of repose for constructive fraud claims bars recovery of any payment made before February 7, 2021. The Trustee may not invoke the IRS's ten-year collection period under § 544(b), because the IRS no longer holds an allowable claim—having amended its proof of claim to $0.00 on January 28, 2025.

[5] "Reasonably equivalent value" is a higher standard than simply "value," and as such the discussion of reasonably "equivalent value suffices" for "value" under § 550 of the Bankruptcy Code.

Because the Trustee is not able to avoid the lien of the Big Storm Loan Documents and will take nothing from Briar Capital through this case, the Lis Pendens should be dissolved as to the Pinellas Park Property as part of an order granting this Motion.

## V. CONCLUSION

For all the foregoing reasons, Briar respectfully requests the entry of summary judgment in its favor on counts I-IV of the Complaint, and for any such other relief the Court deems appropriate.

Dated: June 13, 2025.

>/s/ *Zachary J. Bancroft*
>Zachary J. Bancroft
>Florida Bar No. 0145068
>**BAKER, DONELSON, BEARMAN,**
>**CALDWELL & BERKOWITZ, PC**
>200 South Orange Avenue, Suite 2050
>Orlando, Florida 32801
>Telephone:  (407) 422-6600
>*zbancroft@bakerdonelson.com*
>  *achentnik@bakerdonelson.com*
>  *bkcts@bakerdonelson.com*
>
>*Counsel for Briar Capital Real Estate Fund, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 13, 2025, a true and correct copy of the foregoing has been served electronically via the Court's CM/ECF system on all parties registered to receive electronic noticing in this case.

>/s/ *Zachary J. Bancroft*
>Zachary J. Bancroft

4928-2450-7210